239 P.3d 1130 (2010)
STATE of Washington, Respondent,
v.
Donna E. GREEN, DOB: 6/17/1967, Petitioner.
No. 63001-6-I.
Court of Appeals of Washington, Division 1.
September 27, 2010.
*1132 Twyla Carter, Devon Carroll Knowles, The Defender Association, Seattle, WA, for Appellant.
Peter David Lewicki, Jerry Lincoln Taylor, Jr., King County Prosecuting Attorney, Seattle, WA, for Respondent.
American Civil Liberties, Jamal N. Whitehead, Equal Employment Opportunity Commission, Donald Byron Scaramastra, Melody Rose Spidell, Nancy Lynn Talner, ACLU of Washington Foundation, Seattle, WA, for Amicus Curiae.
APPELWICK, J.
¶ 1 Donna Green appeals two convictions for first degree trespass that arose from violations of a notice of trespass issued by her son's school district. Green alleges her due process rights were violated due to the lack of procedures available to challenge the notice of trespass and due to the vagueness of RCW 28A.635.020. She also alleges the State failed to prove a lawful underlying basis existed for the notice of trespass. The State argued Green waived her due process challenge to the basis for the notice of trespass, and therefore it needs only to prove that Green violated the terms of the notice of trespass. Green was not afforded sufficient due process to support a finding that she waived the right to challenge the basis for the notice of trespass. The State needed to present sufficient evidence to prove that the notice of trespass constituted a lawful condition on her presence at her son's school. It failed to do so. We reverse and remand for dismissal.

FACTS
¶ 2 Donna Green's child attended Carriage Crest Elementary School in the Kent School District from first through sixth grade. In October 2006, the school district issued Green a letter constituting a notice of trespass. The notice informed Green she was restricted from entering Carriage Crest without prior permission, with the exceptions of either picking up her son or contacting the office with questions about her son.[1] A subsequent letter clarified that Green could also enter the premises to attend non-school related functions and to vote.[2] Neither letter *1133 addressed a process for appealing or challenging the notice. Green wrote to the Kent School District Board of Directors requesting an opportunity to discuss the trespass notice. The school board responded that its members and the superintendent had determined that further discussion was not necessary and that it expected Green to abide by the trespass notice.[3] It provided no information on any further right of review.
¶ 3 Shortly after receiving the school district's notice, but prior to the school district's revision regarding non-school related functions, Green arrived on campus to attend a Halloween event with her son's Boy Scout troop outside of school hours. She had not sought permission as directed in the prior notice. School officials called the King County Sheriff's Office, and a deputy issued a trespass letter that completely excluded Green from school grounds, without exception, for one year. Green was not arrested for criminal trespass at that time.
¶ 4 Green was, however, arrested for trespass during two subsequent visits to campus. In November, Green went to the school for a parent-teacher conference, despite knowing that the meeting had been scheduled at the school district's administrative offices rather than at the school. She was arrested for trespass.
¶ 5 In February 2007, Green sought permission to attend a science fair, arguing that the fair was not a "school-related" event because it was hosted by the Parent Teacher Student Association. The school district refused permission, sending the following letter by fax to confirm its refusal:
Pursuant to your request this morning during our telephone call, I am putting in writing, and faxing to you precisely what I told you about this evening's event at Carriage Crest Elementary School.
You are not permitted to attend this event nor be on Carriage Crest Elementary property during this event on February 8, 2007.
If you are on Carriage Crest Elementary School property during this event you will be in violation of the directives of the Kent School District and in violation of the trespass admonishment given to you in person by a deputy of the King County Sheriff's Office. Entering the property of Carriage Crest Elementary when you are not privileged to do so is a violation under RCW 9A.52 that could result in your arrest and criminal prosecution.
....
I urge you not to violate your trespass conditions as you have adamantly declared you will do in our telephone conversation this morning. Your son may be accompanied by your mother at the event, who you indicate is planning to come. If your son needs help unloading or loading a project from your car (and you may drive him to the bus circle to do so), please contact Mrs. Wick and arrange for a school staff member who will be attending to help him do so. You are not permitted to attend this event.
(Underlining, some capitalization, and boldface omitted.) Green received a second trespass arrest when she visited campus to help *1134 pack up her son's project at the science fair later that evening.
¶ 6 The State charged Green with two counts of first degree criminal trespass in King County District Court.[4] Pretrial, the parties disputed the admissibility of evidence explaining the school district's underlying reason for issuing the notice of trespass. The State moved in limine to exclude or redact all references to the reasons for the notice of trespass, contending that it need not prove the underlying reasons for the notice of trespass, but only that Green violated the notice. The State argued that Green had waived her right to challenge the lawfulness of the order by not raising a constitutional challenge in a pretrial motions hearing pursuant to CrR 3.6. Green argued that the question of whether her exclusion from the school was lawful made the additional facts relevant. Green explained that at trial she would not challenge the school district's authority to issue a notice of trespass to a parent, but in this case the notice was issued unlawfully and without due process. The court agreed with the State that the question of whether the order was lawful was an issue of law that must be decided by the court, but granted Green's request to consider the issue in a motion to dismiss raised at the close of the State's case. The court then denied the motion in limine and allowed the parties to introduce evidence as to the underlying reasons for the exclusion.
¶ 7 The parties proceeded to a jury trial. The State called Charles Lind, general counsel for the school district, as a witness. Despite not having worked at the school district until June 2006, Lind testified that Green had been disruptive over the years, taking up significant amounts of teacher and staff time. And, in November 2003 the school district began limiting Green's access to campus: first requiring her to check in at the office, then instructing her to speak only to the principal, and finally requiring her to bring her concerns only to the assistant superintendent.
¶ 8 Lind testified, over Green's hearsay objections, to the two incidents giving rise to the notice of trespass. Lind testified that in September 2006, Green attended a curriculum night, an event for parents to meet teachers and ask questions. Lind testified that Green created a disturbance by asking questions repeatedly and not allowing other parents to engage in the discussion, destroying curriculum night. Lind also testified that shortly after curriculum night, Green directed a student to cross a busy parking lot to meet his mother, contrary to the instructions of a school staff member. Lind also testified that he was not present at either event.
¶ 9 At the conclusion of the State's case, Green moved to dismiss. Green argued that the State had failed to prove that the notice of trespass was lawfully issued. She argued that the notice of trespass was not a lawful condition on her access. Green argued that it had been issued in violation of her right to due process and that insufficient evidence supported the school district's decision to restrict her from the premises. The district court found that the notice had been issued with sufficient due process and that the State had presented sufficient evidence in support of all elements of the charge of criminal trespass to survive the motion to dismiss.
¶ 10 Green then testified in her own defense. She explained that at curriculum night, she listened to a thirty minute presentation by the teacher, and then asked questions for five to seven minutes. She testified that she left one to two pages of written materials about the curriculum on the teacher's desk. When the teacher referred Green to the principal and literacy coach for her additional questions, Green testified that she spoke with them for not more than ten minutes. She testified that she left peacefully, no security was called, and that she was not asked to leave at any time. Regarding the parking lot incident, Green testified that she merely greeted the student and he ran off.
¶ 11 The State argued in closing that Green was guilty of trespass, because she had knowingly entered the school when she *1135 knew that she was not permitted to be there. The State also contended that Green's defense to the trespass was not applicable because the building was not open to the public. Also, Green had not complied with the conditions expressed in the notice of trespass, which the State asserted, without elaboration, were lawful conditions.
¶ 12 Green argued in closing that she had not been disruptive during the two incidents that the school district claimed supported the notice of trespass. Green also raised, and the jury was instructed on, the statutory defense that she had complied with all lawful conditions imposed on access. Green argued that she was lawfully present at the school at the time of both citations because she did not engage in disruptive behavior at that time.
¶ 13 The jury found Green guilty as charged. Green appealed. On RALJ appeal, the superior court affirmed her convictions. The court held that sufficient evidence supported the conviction, and that, although she did not receive a hearing, the procedures employed met the requirements of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). A commissioner of this court granted discretionary review.

DISCUSSION
¶ 14 RALJ 9.1 governs appellate review of a superior court decision reviewing a decision of a district court. State v. Brokman, 84 Wash.App. 848, 850, 930 P.2d 354 (1997). Pursuant to RALJ 9.1(a), an appellate court shall review the decision of the district court to determine whether that court has committed any errors of law. Brokman, 84 Wash. App. at 850, 930 P.2d 354.
¶ 15 A person is guilty of criminal trespass in the first degree if the person knowingly enters or remains unlawfully in a building. ROW 9A.52.070. A person enters or remains unlawfully in or upon premises when the person is not then licensed, invited, or otherwise privileged to so enter or remain. ROW 9A.52.010(3). But, it is a defense that the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises. RCW 9A.52.090(2). Once a defendant has offered some evidence that the entry was permissible under a statutory defense, the State bears the burden to prove beyond a reasonable doubt that the defendant lacked license to enter. RCW 9A.52.090; City of Bremerton v. Widell, 146 Wash.2d 561, 570, 51 P.3d 733 (2002).
¶ 16 Green contends that the lawfulness of the restrictions on her access to campus must be proved by the State and that they were not. She also attacked the validity of the notice of trespass on procedural due process grounds.

I. The Basis of the Notice of Trespass Must be Proved

¶ 17 To prove criminal trespass, the State must prove that the defendant entered or remained unlawfully. RCW 9A.52.070. Green raised the statutory defense that she complied with all lawful conditions at the time of her entry. This placed the burden on the school district to prove that the conditions imposed on Green's access were lawful and that she was not in compliance with those conditions. RCW 9A.52.090; Widell, 146 Wash.2d at 570, 51 P.3d 733.
¶ 18 Parents have a statutory right to access their child's school:[5]
Every school district board of directors shall, after following established procedure, adopt a policy assuring parents access to their child's classroom and/or school sponsored activities for purposes of observing class procedure, teaching material, and class conduct: PROVIDED, That such observation shall not disrupt the classroom procedure or learning activity.
RCW 28A.605.020. This renders the parent privileged to enter the school if the parent complies with the policy issued by the school district. But, that right may be revoked or limited by the school district if a parent is disruptive. Id.
*1136 ¶ 19 The central question in this case is whether the State had the burden to prove, beyond a reasonable doubt, that Green had disrupted the classroom procedure or learning activity at the school property, triggering the statutory right of the school district to restrict Green's access as contained in the notice of trespass. Green contends that the State had that burden and did not prove those facts. The State argued that, because Green waived her opportunity to challenge the notice of trespass, it needed to prove only that the notice of trespass was served and did not need to prove facts justifying the notice.
¶ 20 The State seeks to treat the notice of trespass as functionally equivalent to judicial orders, such as no-contact orders, protection orders, antiharassment orders, and restraining orders. Judicial orders generally may not be challenged in a subsequent proceeding for the violation of such an order. State v. Noah, 103 Wash.App. 29, 46, 9 P.3d 858 (2000) (antiharassment order); State v. Miller, 156 Wash.2d 23, 31 n. 4, 123 P.3d 827 (2005) (no contact order). Instead, a judge determines the validity of these orders as a matter of law when determining whether to admit them into evidence. See, e.g., Miller, 156 Wash.2d at 31, 123 P.3d 827 (no contact order); State v. Karas, 108 Wash.App. 692, 697, 32 P.3d 1016 (2001) (domestic violence protection order). Violation of the judicial order gives rise to criminal punishment without evidence regarding the facts underlying the order, because those facts have already been established in a prior judicial proceeding.[6] The notice of trespass issued by the school district is not a judicial order and was not issued with the same procedural protections as a judicial order.[7] The school district's notice of trespass is not entitled to the same deference as a judicial order.
¶ 21 The State asserted at oral argument in this case that Green had a civil right to appeal the notice of trespass and because she failed to do so, she waived her right to challenge the lawfulness of the restriction in the criminal prosecution.[8] Whether Green waived her right to challenge the lawfulness of the restrictions turns on whether that right to appeal was accompanied by sufficient procedural due process protections that any waiver of her right to appeal was knowing and voluntary. Bowman v. Webster, 44 Wash.2d 667, 669, 269 P.2d 960 (1954) (stating that knowing waiver requires actual or constructive knowledge of one's rights). Procedural due process requires notice and an opportunity to be heard before the government can take a person's liberty or property interests. Bryant v. Joseph Tree, Inc., 119 Wash.2d 210, 224, 829 P.2d 1099 (1992); Nguyen v. Dep't of Health Med. Quality Assurance Comm'n., 144 Wash.2d 516, 522-23, 29 P.3d 689 (2001). The Fourteenth Amendment and the Washington Constitution both provide that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; Const. art. 1, § 3; *1137 In re Marriage of King v. King, 162 Wash.2d 378, 411-12, 174 P.3d 659 (2007).
¶ 22 In the civil context, courts apply the Mathews test to determine whether additional procedures are required to meet procedural due process requirements.[9]See, e.g., Gourley v. Gourley, 158 Wash.2d 460, 467, 145 P.3d 1185 (2006). The Mathews test requires the court to balance the private interest to be protected, the risk of erroneous deprivation of that interest by governmental procedure, and the government's interest in maintaining such a procedure in order to determine the degree of protection afforded in a particular case in a civil proceeding. 424 U.S. at 335, 96 S.Ct. 893; Soundgarden v. Eikenberry, 123 Wash.2d 750, 768, 871 P.2d 1050 (1994). The school district has a clear interest in preserving order in the schools and protecting persons and property. See, e.g., RCW 28A.635.020(3); Travis v. Bohannon, 128 Wash.App. 231, 237, 115 P.3d 342 (2005); State v. Allen, 90 Wash.App. 957, 962, 955 P.2d 403 (1998) ("[T]he State's public interests and policies recognize the care, protection, and safety of children are of the highest order."). A parent has, at minimum, a statutory interest in observing her child's activities in the school.[10] RCW 28A.605.020. In balancing those interests to protect against erroneous deprivation of the parent's interest, we evaluate what degree of due process protection was afforded. Mathews, 424 U.S. at 335, 96 S.Ct. 893.
¶ 23 Here, Green had the right to appeal under RCW 28A.645.010. But, she was not informed of this right. The notice of trespass and other correspondence to Green restricting her right of access cite only to the criminal trespass statute. The notice of trespass instructed Green to direct any concerns about a "school-related issue" to the assistant superintendent. The letter amending the notice of trespass also permitted Green to contact Lind with any questions regarding the notice. Nowhere do these materials mention a right to appeal the restrictions in the notice of trespass to any school district official, the school board, or the court. The materials do not cite the regulations or statutes that provide the right to appeal. They identify no procedure or deadline. No witnesses for the State testified even to an oral notice of any right to appeal, let alone a procedure to appeal. No other evidence established that Green had any formal notice regarding this information. Had Green pursued an appeal, the lack of basic notice of procedural rights left Green vulnerable to legal challenges to the appeal such as untimely filing, lack of administrative exhaustion, and lack of record, at a minimum. The bare right to a judicial appeal, without being informed of that right, was insufficient to protect Green from arbitrary action by the school district.
¶ 24 The State argued at trial that Green knew how to pursue her objections within the school district, as evidenced by her prolific prior use of such avenues as contacting the general counsel, the assistant superintendent, the Title IX officer, the ombudsman, and the school board.[11] But, the argument that Green must have known how to challenge the restrictions in the notice of trespass was based only on Lind's testimony. And, Lind did not have personal knowledge of such activities other than calls Green made directly to him. Also, no evidence established that Green had previously received *1138 formal notice of the procedures to appeal or that any previous interactions with the school district involved formal appeals or activities subject to criminal penalties.
¶ 25 Green did send a letter to the school board requesting an opportunity to discuss the notice of trespass. She received a response indicating that the school board and superintendent had discussed the matter and concluded no conversation with her was necessary. Green was not afforded a right to present information, hear from witnesses, or argue the propriety of the restrictions on her statutory rights. The letter implied the administrative notice was final. Nothing in the response from the school board indicated that she had a right to appeal under chapter 28A.645 RCW. This communication with the school board does not cure the lack of notice of any due process rights. The exchange of letters did not afford Green any due process protection against the erroneous deprivation of her rights.
¶ 26 Providing clear notice of due process rights in the notice of trespass would not impose an undue burden on the school district. The procedural protections given to a parent is a matter of school district policy discretion. The school district may choose to rely on direct appeal to the superior court under the statute or to provide initial review within the school district. But, providing notice of the process is not discretionary. We hold that under the Mathews test without notice of procedures to challenge the notice of trespass, no protection existed to prevent the erroneous deprivation of Green's right to be at her child's school.
¶ 27 The notice of trespass only warned Green of criminal liability. Nothing advised Green of her right to a civil appeal of the restrictions. On these facts, we cannot conclude Green's failure to pursue a civil appeal constituted a knowing and intelligent waiver of the opportunity to challenge the underlying basis of the notice of trespass.
¶ 28 In further support of this conclusion, we note that the Supreme Court rejected the State's argument with respect to a comparable no trespass order in the context of public housing. In Widell, defendants Widell and Blunt were convicted of second degree trespass for violating a notice of trespass issued by the Bremerton Housing Authority. 146 Wash.2d at 564, 51 P.3d 733. That notice prohibited the defendants from accessing a certain public housing development. Id. at 566, 51 P.3d 733. The City of Bremerton argued that, like a criminal contempt proceeding, the validity of the notice of trespass could not be raised at the criminal proceeding. Id. at 568-69, 51 P.3d 733. Our Supreme Court held that "[w]hether the antitrespass policy may serve to exclude the Petitioners is far from a collateral matter or procedural complaint." Id. at 569-70, 51 P.3d 733. When distinguishing from criminal contempt decisions, which may not be collaterally attacked, the court explained, "We see no reason to extend this deference to housing authority policies or exclusion orders issued by individual police officers." Id. at 569, 51 P.3d 733. The court went on to analyze whether the State had met its burden to disprove the defenses raised by the defendants that their entrance was lawful. Id. at 570-74, 51 P.3d 733. We see no reason to reach a different result with respect to an administrative order issued by a school official.
¶ 29 On these facts, the notice of trespass is merely an evidentiary tool in the prosecution for trespass.[12]State v. Bellerouche, 129 Wash.App. 912, 916, 120 P.3d 971 (2005) (one purpose of a trespass notice "is to provide proof, at a later trial, that the accused knew his presence on the property was forbidden."). Service of the notice of trespass proves only that the recipient had notice that the issuing authority considered her license to enter the property to have been revoked. On these facts, issuing the notice did not relieve the State of its burden to prove the elements of criminal trespass, including facts necessary to prove that the school district's *1139 exclusion of Green from school property was lawful.

II. Sufficiency of the Evidence at Trial

¶ 30 Green does not dispute that she received the two notices of trespass or that her presence on school property was a violation of the purported restrictions contained in those notices. She argues that the State failed to prove that there was a lawful basis to restrict her statutory right to be present at the school. We agree.
¶ 31 Evidence is sufficient if, when viewed in the light most favorable to the State, any reasonable trier of fact could find guilt beyond a reasonable doubt. State v. DeVries, 149 Wash.2d 842, 859, 72 P.3d 748 (2003). When a criminal defendant challenges the sufficiency of the evidence, the defendant admits the truth of the State's evidence, and all reasonable inferences therefrom are drawn in favor of the State. State v. Goodman, 150 Wash.2d 774, 781, 83 P.3d 410 (2004).
¶ 32 The State had the burden to prove that Green acted unlawfully when entering the school property. RCW 9A.52.090(2). To prove that the revocation of Green's right to access campus was lawful, the school district was required to prove that Green had disrupted a classroom procedure or learning activity. RCW 28A.605.020. The State failed to meet its burden. It did not offer any fact witnesses with personal knowledge of the facts necessary to establish a lawful revocation of her right to be on the school grounds stated in the notice of trespass. The school district's general counsel, Lind, testified to the events leading up to the issuance of the notice. He acknowledged he had no personal knowledge of the events. He testified to general events that led up to the notice of trespass occurring before he worked for the school district. The court admitted Lind's testimony, over Green's hearsay objection, only to explain Lind's understanding of why the notice was issued. Similarly, the court expressly admitted the notice of trespass to explain the facts underlying the notice, not for the truth of the matter asserted. Lind's testimony was clearly hearsay if used to prove a factual basis for the notice of trespass.
¶ 33 As such, there was no competent testimony to establish that the school district had a basis on which to revoke Green's limited statutory right of school access. Without establishing that Green acted in a disruptive manner, the school district had no statutory basis for limiting her presence, and her violation of the notice was not criminal. The convictions were not supported by sufficient evidence. The trial court erred as a matter of law when it did not grant the defense's motion to dismiss.
¶ 34 We do not reach the merits of whether such restrictions would have been appropriate had the statutory basis been met. We respect the right and obligation of the school district to exclude vexatious parents who disrupt the school or pose a risk of harm. We also acknowledge that Mathews does not require burdensome processes to affect this right. But, we cannot sanction a criminal conviction for violations of restrictions contained in a letter constituting a notice of trespass absent a determination based on competent evidence that the restrictions were lawfully imposed and absent minimal notice of due process rights. Otherwise, "one would be guilty of trespass by returning to property after being unjustly ordered to vacate it. That, the law does not condone." State v. R.H., 86 Wash.App. 807, 813, 939 P.2d 217 (1997).
¶ 35 We need not address Green's other arguments.
¶ 36 We reverse and remand for dismissal.
WE CONCUR: DWYER, C.J., and GROSSE, J.
NOTES
[1] The letter constituting the notice of trespass, after setting forth the facts of the two incidents upon which it was based, stated:

These incident[s] have a common theme that concerns the district: your inappropriate conduct on Curriculum Night and at the bus circle demonstrate that you are having an adverse impact on other students and their families. In consideration of these new events and based on the totality of the events discussed in letters to you in 2003; February 9, 2004; December 14, 2005; and August 21, 2006, the Kent School District is formally notifying you that you are trespassed from the premises of Carriage Crest Elementary School until further notice. The following rules and exception[s] will apply to your contact with the school:
(1) You may contact the Carriage Crest office to schedule parent-teacher conferences during the standard time when other parent-teacher conferences will be scheduled. The [November 2006] parent-teacher conference will be scheduled for the Administrative Center, located at 12033 SE 256th Street in Kent.
(2) You may contact the Carriage Crest office with student-specific questions about [J.] (but not about curriculum, teaching materials, or educational formatthese issues must still be directed to Dr. [Mark] Haddock, as set forth below).
(3) You may enter the parking lot and bus circle to pick up and drop off [J.] at school. You may not contact other students or school staff while in the parking lot.
(4) You may not attend any evening or day events that are held at the school unless prior approval is received from the district/building administration.
At all other times and in any other manner, you are prohibited from entering or being on the premises of Carriage Crest Elementary School. Any violation of this trespass notice may result in criminal prosecution under RCW 9A.52.070 and RCW 9A.52.080.
As stated in my previous letter, questions about curriculum, school staff, schedules, homework, board policy, district finances, or any other school-related issue may still be directed to Dr. Haddock.
(Some underlining and some capitalization omitted.)
[2] The letter amending the school district's notice of trespass stated:

It has come to our attention that there are several non-school-related activities on the property of Carriage Crest Elementary School in which you desire to be involved.... The following conditions regarding your access to the Carriage Crest Elementary Campus listed in the October 2nd letter are repeated and modified (underlined and in bold) as follows:
....
(5) You may attend non-school related events or activities held at Carriage Crest Elementary School outside of school hours if the sponsor or organizer of the event has no objection to your attendance.
(6) You may enter Carriage Crest Elementary School to access a polling place on the day of any election. During the school day, this exception is limited to the time necessary for voting, after which you must leave school property immediately.
If you have any questions about these changes and additions to the conditions for your entry to school property, please feel free to contact me.
(Underlining and boldface omitted.)
[3] The school board's letter to Green stated:

Dear Ms. Green:
Each of the Board members and the Superintendent has had an opportunity to review the materials that you submitted at the last Board meeting. In that material, you requested an opportunity in closed or open session to discuss the no trespass notice the district served to you.
It is the position of the Board that this is an administrative matter as outlined in Board policy and that further discussion at the Board level is neither required nor necessary. The Board expects that you will abide by this notice as outlined in Mr. [Charles] Lind's letter to you.
[4] The complaint stated that Green "did knowingly enter or remain unlawfully" in Carriage Crest Elementary School.
[5] The right of a parent to access a school is in addition to the common law right of a member of public to be present in areas open to the public.
[6] For example, an antiharassment order is issued only after a fact-finding hearing where a court finds unlawful harassment by a preponderance of the evidence. RCW 10.14.080(3); Noah, 103 Wash.App. at 38, 9 P.3d 858. A domestic violence protection order, issued under chapter 26.50 RCW, is issued with several procedural protections, including:

(1) a petition to the court, accompanied by an affidavit setting forth facts under oath; (2) notice to the respondent within five days of the hearing; (3) a hearing before a judicial officer where the petitioner and respondent may testify; (4) a written order; (5) the opportunity to move for revision in superior court; (6) the opportunity to appeal; and (7) a one-year limitation on the protection order if it restrains the respondent from contacting minor children.
Gourley v. Gourley, 158 Wash.2d 460, 468-69, 145 P.3d 1185 (2006) (direct appeal from civil proceeding entering an order for a domestic violence protection order): see also Karas, 108 Wash.App. at 699-700, 32 P.3d 1016; RCW 10.99.040.
[7] RCW 28A.645.010 grants an aggrieved person the right to appeal the decision or order of a school board or school official. The aggrieved person must appeal within 30 days of the order. RCW 28A.645.010. Review by the superior court is de novo. RCW 28A.645.030. Had such an appeal been taken, proof of a superior court order establishing the lawfulness of the restrictions could relieve the State from proving the lawfulness of the restrictions in the criminal trespass prosecution. But, here, no appeal was taken and no judicial order exists.
[8] The State did not brief this issue.
[9] We note that the Mathews test is generally not applicable in the criminal context. Medina v. Cal., 505 U.S. 437, 443, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992); State v. Heddrick, 166 Wash.2d 898, 904 n. 3, 215 P.3d 201 (2009). However, it is applicable to the question of whether due process outside of the proceeding to convict was sufficient to establish waiver of the right to challenge the notice of trespass in this proceeding.
[10] The parties dispute whether additional constitutional rights are at issue in this case. We need not resolve that question in light of our disposition of other issues.
[11] The inference from Lind's testimony is that Green had the right to an informal appeal within the school district similar to an administrative appeal. No evidence as to this procedure was submitted by the State. Also, Lind did not elaborate as to whether there are aspects of this procedure that are mandatory before one appeals under RCW 28A.645.010. The parties did not discuss whether one is required to exhaust certain administrative remedies before taking an appeal to superior court.
[12] The trespass warning letter issued by the King County Sheriff's Office is similarly not issued by a court and therefore provides no more of a legal basis for a criminal conviction than the school district's letter. If the State chose to rely on her violation of that letter, proof of its legality would still be required at trial.