32 P.3d 1016 (2001)
STATE of Washington, Appellant,
v.
Robert James KARAS, Respondent.
No. 26493-5-II.
Court of Appeals of Washington, Division 2.
October 12, 2001.
*1018 William Berggren Collins, Assistant Attorney General, Olympia, Scott Steven Schweiger, Attorney At Law, Tacoma, Counsel for Appellant.
Michael Lee Sommerfeld, Pierce Co. Dep. Pros. Atty., Tacoma, Counsel for Respondent.
*1017 SEINFELD, J.
Robert James Karas appeals convictions of residential burglary and violation of a domestic violence protection order. He argues that the Domestic Violence Prevention Act (the Act), chapter 26.50 RCW, is unconstitutional and, thus, the domestic violence order underlying the offenses was invalid. He also challenges the superior court commissioner's authority to issue the protection order. Finding no merit in these contentions, we affirm.

FACTS
On June 12, 2000, Karen Gillespie, who had been living with Karas, petitioned for and received an ex parte temporary protection order against him. On that same day, a police officer served Karas with Gillespie's petition and the order, which directed him to appear at a June 26 hearing.
On June 26, Gillespie and Karas appeared before a superior court commissioner and testified. Following the hearing, the commissioner entered a permanent protection order that restrained Karas from contacting Gillespie and that excluded him from entering a residence on 90th Avenue in Edgewood. Karas did not appeal that order.
Karas entered the 90th Avenue residence on June 29 and contacted Gillespie. Subsequently, the State charged him with one count of residential burglary (domestic violence), RCW 9A.52.025 and RCW 10.99.020, and one count of violation of a protection order (domestic violence), RCW 26.50.110(1) and RCW 10.99.020.
At a pretrial proceeding, Karas sought to have the charges dismissed by arguing that the Act lacks procedural due process protections. The trial court denied the motion, ruling that Karas could not collaterally attack a prior civil proceeding in this current criminal case.
Karas then pleaded guilty to the two charged counts. On appeal, he again challenges the Act and further argues that the Act provides for criminal penalties and, hence, a superior court commissioner lacks authority to issue a permanent protection order.
The State contends that (1) Karas waived his right to appeal when he pleaded guilty, (2) the collateral attack doctrine bars the appeal, and (3) Karas cannot make a facial challenge to the Act. In an amicus brief, the Attorney General addresses the Act's constitutionality.

DISCUSSION

I. APPEALABILITY
Karas challenges the validity of chapter 26.50 RCW in its entirety but he does not challenge the residential burglary statutes, RCW 9A.52.025 and RCW 10.99.020. He argues that the protection order provided the only basis for convicting him of entering his own home; if that order is void, there is no crime.
The State responds that Karas is actually challenging the sufficiency of the evidence and that his guilty plea precludes such a challenge. It argues that because the trial court relied on Karas's factual admissions of guilt to convict him on the residential burglary charge, the validity of the protection order is irrelevant.
Generally, a defendant waives his right to appeal by pleading guilty. See State v. Majors, 94 Wash.2d 354, 356, 616 P.2d 1237 (1980). But "a plea of guilty does not *1019 preclude an appeal where collateral questions, such as the validity of the statute, the sufficiency of the information, the jurisdiction of the court, or the circumstances under which the plea was made, are raised." State ex rel. Fisher v. Bowman, 57 Wash.2d 535, 536, 358 P.2d 316 (1961) (emphasis added). As Karas is challenging both the statute's validity and the court's jurisdiction, the general rule does not preclude this appeal.
In this case, if the domestic violence prevention statute is invalid, the protection order also would be invalid and, hence, there would be no offense. Further, Karas's challenge to the commissioner's authority to issue the protection order is a challenge to the court's jurisdiction. Thus, Karas's guilty plea does not alone preclude this appeal.
Whether the collateral attack doctrine applies is a closer question. As the court indicated in State v. Noah, 103 Wash. App. 29, 46, 9 P.3d 858 (2000), review denied, 143 Wash.2d 1014, 22 P.3d 802 (2001), a defendant generally may not attack the underlying court order in a contempt action. But there is an exception for an allegedly void order. Further, a challenge to the constitutional validity of a predicate conviction is not a collateral attack when the State may use that conviction to establish an essential element of a charge. State v. Summers, 120 Wash.2d 801, 810, 846 P.2d 490 (1993).
Here, Karas argues that the collateral attack bar does not apply because the underlying order is based on an allegedly unconstitutional statute and because the commissioner lacked authority to issue the order. But even if Karas can hurdle the collateral attack bar, he fails to establish the protection order's invalidity.

II. CONSTITUTIONALITY OF DOMESTIC VIOLENCE PREVENTION ACT[1]
The Act creates "an action known as a petition for an order for protection in cases of domestic violence." RCW 26.50.030. The petition must be accompanied by an affidavit, made under oath, setting forth the facts supporting the request for relief. RCW 26.50.020(1); RCW 26.50.030(1). See also RCW 26.50.010(1) (defining "domestic violence"). The court must then order a hearing for within 14 or 24 days, depending on the type of service, and the respondent must be served no less than five court days before the hearing. RCW 26.50.050. The Act also gives the court authority to issue an ex parte temporary protection order pending the hearing.[2] RCW 26.50.050; RCW 26.50.070.
Following the hearing, the court may order various forms of relief but "no order for protection shall grant relief to any party except upon notice to the respondent and hearing[.]" RCW 26.50.060(1), (5). If the restrained person knows of the order and nonetheless violates it, he may be subject to criminal penalties or penalties for contempt under the Act's enforcement provision. RCW 26.50.110(1), (3); RCW 26.50.115.
As statutes carry a presumption of constitutionality, Karas must establish the Act's unconstitutionality beyond a reasonable doubt. Wash. Fed'n of State Employees v. State, 127 Wash.2d 544, 558, 901 P.2d 1028 (1995). If we were to find the Act unconstitutional, Karas would be able to show that it operated to his prejudice based upon his subsequent convictions for violating an order issued under the Act. Thus, Karas satisfies the prevailing rule that states: "one who seeks to challenge the constitutionality of a law or other governmental action, either on *1020 behalf of himself or a class which he represents, must show that the particular action complained of has operated to his prejudice." MacLean v. First Northwest Indus. of Am., Inc., 96 Wash.2d 338, 347, 635 P.2d 683 (1981).
Karas contends that application of the Act violated his right to procedural due process because the Act's procedures do not comply with the Civil Rules. He claims that the risk of erroneous deprivation of rights under the Act is great because it provides for only 14 days' notice and it does not contain any provision for discovery. He further argues that it is difficult for a respondent to marshal witnesses on such short notice.
The State contends that cases under the Act are special proceedings that supercede the Civil Rules. CR 81(a). It also contends that given the emergency nature of these cases, 14 days' notice is not constitutionally inadequate and that nothing in the Act prevents a party from presenting witnesses. Further, we note that the Act does not preclude a party from seeking discovery.
Procedural due process constrains governmental decisionmaking that deprives individuals of liberty or property interests within the meaning of the Due Process Clause. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Due process is a flexible concept; the particular situation determines its exact contours. Mathews, 424 U.S. at 334, 96 S.Ct. 893. But "[t]he fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333, 96 S.Ct. 893 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).
Determining what process is due in a given situation generally requires consideration of (1) the private interest involved, (2) the risk that the current procedures will erroneously deprive a party of that interest, and (3) the governmental interest involved. Mathews, 424 U.S. at 335, 96 S.Ct. 893; Spence v. Kaminski, 103 Wash.App. 325, 335, 12 P.3d 1030 (2000). A protection order may implicate several private interests including exclusion from a dwelling and the interest in one's children. See also Baker v. Baker, 494 N.W.2d 282, 287 (Minn.1992); State ex rel. Williams v. Marsh, 626 S.W.2d 223, 230 n. 8 (Mo.1982).[3]
Here, the Act's provisions satisfy the two fundamental requirements of due process notice and a meaningful opportunity to be heard by a neutral decisionmaker. The procedural safeguards include: (1) a petition to the court setting forth facts under oath; (2) notice to the respondent; (3) a hearing before a judicial officer where the petitioner and respondent may testify; (4) the opportunity to file a motion to modify a protection order; (5) a requirement that a judicial officer issue any order; and (6) the right to appeal. See, e.g., Spence, 103 Wash.App. at 334, 12 P.3d 1030 (noting in dicta that the "process for issuing a permanent protection order provides adequate notice and ability to be heard"). Karas was afforded each of these safeguards although he failed to exercise his right to appeal the protection order.
A protection order issued under chapter 26.50 RCW "does not protect merely the `private right' of the person named as petitioner in the order." State v. Dejarlais, 136 Wash.2d 939, 944, 969 P.2d 90 (1998). Rather, the Act reflects the legislative determination that the public has an interest in preventing domestic violence:
"Domestic violence is a problem of immense proportions affecting individuals as well as communities. Domestic violence has long been recognized as being at the core of other major social problems: Child abuse, other crimes of violence against person or property, juvenile delinquency, and alcohol and drug abuse. Domestic violence costs millions of dollars each year in the state of Washington for health care, absence from work, services to children, and more."
Dejarlais, 136 Wash.2d at 944, 969 P.2d 90 (quoting LAWS OF 1992, ch. 111, § 1). See *1021 also Spence, 103 Wash.App. at 335, 12 P.3d 1030. "When the purpose of legislation is to promote the health, safety and welfare of the public and bears a reasonable and substantial relationship to that purpose, every presumption must be indulged in favor of constitutionality." State v. Lee, 135 Wash.2d 369, 390, 957 P.2d 741 (1998).
Considering the minor curtailment of Karas's liberty imposed by the protection order and the significant public and governmental interest in reducing the potential for irreparable injury, the Act's provision of notice and a hearing before a neutral magistrate satisfies the inherently flexible demands of procedural due process. See Spence, 103 Wash. App. at 332, 12 P.3d 1030; State v. Lee, 82 Wash.App. 298, 313, 917 P.2d 159 (1996) (stalking statute does not violate procedural due process because there is strong State interest in curtailing stalking behavior; no substantial privacy interest is at stake; and there is only a minimal risk of erroneous deprivation of liberty because enforcement requires a showing that intentional stalking behavior provoked reasonable fear in victim), aff'd, 135 Wash.2d 369, 957 P.2d 741 (1998). Thus, Karas has not carried the heavy burden of establishing that the Act is unconstitutional beyond a reasonable doubt.

III. AUTHORITY OF SUPERIOR COURT COMMISSIONERS
Karas argues that RCW 2.24.040, the statute describing the commissioner's authority, does not include the power to issue permanent protection orders. He further argues, for the first time in his reply brief that these proceedings are quasi-criminal and, thus, there is a constitutional right to a jury trial. He uses this argument to support his contention that a superior court commissioner, who lacks authority to preside over jury trials, has no authority to preside over a contested domestic violence proceeding.
Although RCW 2.24.040 does not expressly refer to permanent domestic violence protection orders, the Washington Constitution grants broad powers to court commissioners, stating:
There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law.
WASH. CONST. art. IV, § 23 (emphasis added). The duties of judges "at chambers" include the power to "entertain, try, hear and determine, all actions, causes, motions, demurrers and other matters not requiring a trial by jury[.]" State ex rel. Lockhart v. Claypool, 132 Wash. 374, 375, 232 P. 351 (1925). See also State ex rel. Henderson v. Woods, 72 Wash.App. 544, 549, 865 P.2d 33 (1994) (legislature cannot subtract from the courts' constitutionally based powers). Thus, Karas's effort to limit a commissioner's authority to those matters expressly set forth in RCW 2.24.040 fails.
Moreover, Karas's reply brief argument regarding jury trials comes too late for this court's consideration. RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Nor does the record indicate that Karas argued lack of authority when the commissioner issued the order. See State v. Wenatchee Valley Holding Co., 169 Wash. 535, 540-41, 14 P.2d 51 (1932) (parties waived objection to commissioner's authority to preside over selection and swearing in of jury where all parties consented and defendant did not object until after jury rendered verdict).
As Karas's challenge to the commissioner's authority to issue the order also fails, we affirm.
HOUGHTON, J., and HUNT, A.C.J., concur.
NOTES
[1] The State contends that Karas cannot facially challenge the Act, citing authority stating that "[u]nless First Amendment freedoms are involved, this court generally will only determine whether a statute is unconstitutional as applied to the facts of the case." State v. Carver, 113 Wash.2d 591, 599, 781 P.2d 1308, 789 P.2d 306 (1989); see also City of Spokane v. Douglass, 115 Wash.2d 171, 182-83, 795 P.2d 693 (1990). But at oral argument, Karas contended that he is making an "as applied" challenge to the statute. We do not have a record of the domestic violence protection order proceeding and, thus, we review the Act's application only as to those facts that the parties appear to concede in this case.
[2] To receive a temporary order, the petitioner must allege that irreparable injury could result if an order is not issued immediately. The order may not exceed 14 or 24 days depending on the type of service and unless otherwise allowed, the respondent must be personally served with the order, the petition and notice of the hearing date. RCW 26.50.070(1), (4).
[3] Karas delineates a number of rights that a protection order hypothetically could affect. But the protection order here simply restrained Karas from contacting Gillespie or her children and excluded him from the Edgewood residence and from Gillespie's workplace.